750 S.E.2d 612

**The STATE, Respondent,**

**v.**

**Wesley SMITH, Petitioner.**

Appellate Case No. 2011–188646.

No. 27328.

Supreme Court of South Carolina.

Heard Sept. 17, 2013.

Decided Oct. 30, 2013.

Rehearing Denied Dec. 4, 2013.

216

Assistant Appellate Defender Kathrine H. Hudgins, of Columbia, for Petitioner.

Attorney General Alan M. Wilson, Chief Deputy Attorney General John W. McIntosh, Senior Assistant Deputy Attorney General Salley W. Elliott, Assistant Attorney General Christina J. Catoe, all of Columbia, and Solicitor John G. Hembree, of North Myrtle Beach, for the State.

Justice KITTREDGE.

We granted a petition for writ of certiorari to review the court of appeals' affirmance of Petitioner's conviction for aiding and abetting homicide by child abuse. *State v. Smith*, 391 S.C. 353, 705 S.E.2d 491 (Ct.App.2011). Petitioner contends that the court of appeals erred by applying common law principles of accomplice liability to affirm his conviction for a statutory offense for which he was not indicted. We reverse the court of appeals and remand for a new trial.

## I.

Petitioner was the father of the minor child (Victim) who died as a result of child abuse on February 14, 2004. Victim lived only 130 days. Petitioner and the Victim's mother, Charlene Dandridge, were Victim's caretakers. The two contributing causes of death were blunt-force trauma to the chest and pseudoephedrine toxicity. An autopsy revealed seventeen rib fractures, some of which occurred several weeks prior to death and some that occurred in the forty-eight hours immediately prior to death. The autopsy also revealed that, on the day she died, Victim had been given approximately four times the adult dosage of pseudoephedrine.[1]

Petitioner was indicted for homicide by child abuse limited to section 16–3–85(A)(1),[2] as follows:

That WESLEY SMITH did in Horry County, on or about February 14, 2004, cause the death of [Victim], a four (4) month old child, while committing child abuse or neglect, and the child's death occurred under circumstances mani-

---

1. Petitioner admitted to giving the Victim "cough medicine" on the day of her death.

2. Conversely, Dandridge was not indicted pursuant to section 16–3–85(A)(1); she pled guilty to unlawful conduct towards a child.

festing an extreme indifference to human life, in violation of Section 16–3–85(A)(1), S.C.Code of Laws, 1976, as amended. The trial court, on its own initiative, instructed the jury on both South Carolina Code section 16–3–85(A)(1) (section (A)(1)), homicide by child abuse as a principal, and South Carolina Code section 16–3–85(A)(2) (section (A)(2)), homicide by child abuse by aiding and abetting. The trial court indicated that it believed that section (A)(2) was a lesser-included offense of section (A)(1), or alternatively, that section (A)(2) was merely another means to convict a criminal defendant of the same underlying crime of homicide by child abuse but would lead to a lesser sentence.[3] Petitioner's trial counsel objected to the jury instruction on section (A)(2) because he was not put on notice of the section (A)(2) offense.[4] The jury subsequently found Petitioner guilty of violating the unindicted section (A)(2) offense without reaching the indicted section (A)(1) charge.[5]

## II.

■ The court of appeals declined to address the grounds relied on by the trial court but affirmed Petitioner's conviction

---

3. A defendant convicted of violating section (A)(1) may be imprisoned for twenty years to life, while a defendant convicted of violating section (A)(2) must be imprisoned for between ten and twenty years. S.C.Code § 16–3–85(C) (2003).

4. It was the State's theory that Petitioner was the sole caretaker of Victim during the relevant time period, and hence the indictment was limited to section (A)(1). After Petitioner's counsel objected to the trial court's consideration of a jury charge on the section (A)(2) offense, the trial court inquired of the State: "[W]hat says the State on that issue? The indictment specifically says (A)(1)." The assistant solicitor responded with his own question, "my question to the Court is ... there any evidence, any evidence that would tend to give the jury the ability to convict [Petitioner] of the lesser-included offense[?]" On certiorari to this Court, the State only haltingly defends section (A)(2) as a lesser-included offense of section (A)(1), referring to section (A)(2) as "a sort of 'lesser offense' of (A)(1) because it provides for a lesser penalty." (Resp't's Br. 10).

5. The verdict form contained four possible verdicts: Guilty as to the section (A)(1) charge; Not Guilty as to the section (A)(1) charge; Guilty as to the section (A)(2) charge; and Not Guilty as to the section (A)(2) charge. The jury found Petitioner guilty of the section (A)(2) charge but made no finding on the charge under section (A)(1).

on what it believed was an alternative sustaining ground, stating:

It is well-settled that a defendant may be convicted on a theory of accomplice liability pursuant to an indictment charging him only with the principal offense. Thus, the indictment charging [Petitioner] with homicide by child abuse as a principal was effective to put him on notice that the State may request to proceed on aiding and abetting homicide by child abuse as well.

*Smith,* 391 S.C. at 365, 705 S.E.2d at 497–98 (quoting *State v. Dickman,* 341 S.C. 293, 295, 534 S.E.2d 268, 269 (2000)) (internal citations and quotations omitted). This was error.

■■ The common law principles of accomplice liability, as applied by the court of appeals, do not apply in the context of the homicide by child abuse statute. "The cardinal rule of statutory construction is to ascertain and effectuate the intent of the legislature." *Hodges v. Rainey,* 341 S.C. 79, 85, 533 S.E.2d 578, 581 (2000). "What a legislature says in the text of a statute is considered the best evidence of the legislative intent or will. Therefore, the courts are bound to give effect to the expressed intent of the legislature." *Id.* (quoting Norman J. Singer, *Sutherland Statutory Construction* § 46.03 at 94 (5th ed.1992)).

(A) A person is guilty of homicide by child abuse if the person:

(1) causes the death of a child under the age of eleven while committing child abuse or neglect, and the death occurs under circumstances manifesting an extreme indifference to human life; or

(2) knowingly aids and abets another person to commit child abuse or neglect, and the child abuse or neglect results in the death of a child under the age of eleven.

S.C.Code § 16–3–85(A) (2003).

■■ We find the language of section 16–3–85 unambiguously signals the General Assembly's intent to codify two distinct crimes—homicide by child abuse as a principal pursuant to section (A)(1) and homicide by child abuse by aiding and abetting pursuant to section (A)(2), each with distinct elements and sentencing ranges.[6] Because the section (A)(2) offense is

---

6. An indicted offense necessarily includes all lesser-included offenses, which may properly (if supported by the evidence) be presented to the

not a lesser-included offense of section (A)(1), an indictment expressly charging only a section (A)(1) offense does not provide notice of a section (A)(2) charge. *See State v. Cody,* 180 S.C. 417, 423, 186 S.E. 165, 167 (1936) ("[I]t is a rule of universal observance in administering the criminal law that a defendant must be convicted, if convicted at all, of the particular offense charged in the bill of indictment.").

## III.

In sum, Petitioner was indicted only for homicide by child abuse pursuant to section (A)(1). The court of appeals erred in affirming Petitioner's conviction under section (A)(2)—an unindicted charge that was not a lesser-included offense of the indicted offense. Accordingly, we reverse the decision of the court of appeals and remand this case to the trial court for a new trial on the indicted offense of homicide by child abuse pursuant to section (A)(1).[7]

REVERSED AND REMANDED.

TOAL, C.J., PLEICONES, BEATTY, and HEARN, JJ., concur.

---

jury. *See State v. Drayton,* 293 S.C. 417, 428, 361 S.E.2d 329, 335 (1987) ("A trial judge is required to charge the jury on a lesser included offense if there is evidence from which it could be inferred the lesser, rather than the greater, offense was committed."). Section (A)(2), however, is not a lesser-included offense of section (A)(1). Where, as here, the General Assembly provides separate offenses in the same statutory scheme, only the indicted offense should be submitted to the jury. The unindicted section (A)(2) charge to the jury was error and constituted a material variance from the indicted crime. *See, e.g., Bailey v. State,* 392 S.C. 422, 431, 709 S.E.2d 671, 676 (2011) (granting PCR where counsel was ineffective for failing to object to erroneous supplemental jury instructions, which permitted a jury "to convict [defendant] for 'an act alternative to the one specified with particularity in the indictment' "). The State, of course, could have indicted Petitioner for the offenses of section (A)(1) *and* section (A)(2), but it did not do so.

7. We understand the inherent difficulties in the prosecution of homicide by child abuse cases. As Chief Justice Toal astutely observed:

Child abuse differs from other types of crimes in several respects. Specifically, the crime of child abuse often occurs in secret, typically in the privacy of one's home. The abusive conduct is not usually confined to a single instance, but rather is a systematic pattern of

violence progressively escalating and worsening over time. Child victims are often completely dependent upon the abuser, unable to defend themselves, and often too young to alert anyone to their horrendous plight or ask for help.
*State v. Fletcher,* 379 S.C. 17, 27, 664 S.E.2d 480, 484–85 (2008) (Toal, C.J. dissenting). In this case, there are means upon which the State, if it desires, may on retrial bring the section (A)(2) charge against Petitioner which comport with requirements of notice and due process.