784 S.E.2d 252

**The STATE, Respondent,**

v.

**Tyrone J. KING, Appellant.**

**Appellate Case No. 2012–213461.**
**No. 5390.**

Court of Appeals of South Carolina.

Heard Jan. 6, 2015.
Decided March 16, 2016.
Rehearing Denied May 2, 2016.

Howard Walton Anderson III, of Law Office of Howard W. Anderson III, LLC, of Clemson; and Chief Appellate Defender, Robert Michael Dudek, of Columbia, for appellant.

Attorney General, Alan McCrory Wilson, Chief Deputy Attorney General, John W. McIntosh, Senior Assistant Deputy Attorney General, Donald J. Zelenka, Assistant Attorney General, Alphonso Simon Jr., all of Columbia; and Solicitor, William B. Rogers Jr., of Bennettsville, for respondent.

MCDONALD, J.

Tyrone J. King appeals his convictions for murder, possession of a weapon during the commission of a violent crime, and assault and battery in the third degree. King argues the circuit court erred in admitting prior bad acts evidence, denying his motion for a mistrial, and denying his motion for a new trial. We remand.

**FACTS/PROCEDURAL BACKGROUND**

On November 11, 2011, King allegedly shot and killed James Galloway (Victim) in Victim's Marlboro County home. Thereafter, King purportedly hit Karen Galloway (Wife) on the head with the handle of his gun and pointed his gun at both Wife and Reggie Cousar (Cousin). After some further scuffling, King ran out the back door of the residence. Following a foot chase, King was arrested.

During the course of the investigation, law enforcement recovered the Galloways' cordless telephone near the pick-up truck where King was apprehended, a bottle of liquor from King's pocket, and a nine-millimeter handgun with an extend-

ed clip from the wooded area behind King's residence. Law enforcement found a cartridge casing and bullet hole in the Galloways' master bedroom and recovered a cartridge casing and projectile from the living room. As a result, Marlboro County deputies conducted two videotaped interrogations of King.

In the first interrogation, which took place on November 11, 2011, King stated he went to the Galloways' home with Aloysius McLaughlin to buy alcohol. At this time, King was facing charges for kidnapping and armed robbery against McLaughlin in the Town of McColl (McColl Charges). However, King stated that he and McLaughlin were back on "good terms" and that McLaughlin shot and killed Victim. King further explained that after the shooting, he tried to calm Wife, and that he "waived" or "swung" the gun at her. King claimed he then gave the gun back to McLaughlin and ran from the Galloways' home in fear.

During the second interrogation, which took place on November 16, 2011, King claimed that he obtained the gun from an individual named "Broom." King explained that he went to the Galloway home to sell the gun, and while he was attempting to remove the clip, the gun fired and Victim was shot.

On January 31, 2012, the Marlboro County Grand Jury returned four indictments against King for (1) murder, (2) possession of a weapon during the commission of a violent crime, (3) assault and battery of a high and aggravated nature, and (4) pointing and presenting a firearm.

The Honorable Edward B. Cottingham called the case for a jury trial on September 10, 2012. Following jury selection, King made several pretrial motions, including a motion to "exclude any evidence of the pending armed robbery charge." The State indicated the pending charge was part of its Rule 404(b), SCRE,[1] motion "to allow the prior bad act in" under the "intent, motive, or the common plan or scheme [exceptions] to show that there [was] a lack of mistake in the

---

1. Rule 404(b), SCRE ("Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible to show motive, identity, the existence of a common scheme or plan, the absence of mistake or accident, or intent.").

defendant going into [the Galloways'] home." The State clarified that the prior armed robbery was against McLaughlin and Melissa Graham, "[t]he same two individuals that [King] says were with him when he committed this murder." The circuit court stated, "I'm not likely to let that in," but agreed to allow the State to present its evidence before making a ruling. The circuit court then explained:

> [Y]ou know [I've] got to balance probative value against prejudicial [e]ffect, and in this case you've got eye witnesses as I recall from prior hearings. I'll listen to it, but [I] have some further concern about it.
>
> . . . .
>
> But I have some concerns with a Lyle [2] issue unless you are saying that you've got proof that [King] tried to rob this identical individual several weeks earlier. But I didn't hear you say [that]. You said some group of people, didn't you?
>
> . . . .
>
> I want to get that straight [in chambers], and then we'll get on the record with it.

King then moved to exclude or redact several portions of the interrogation videos, which were later introduced as State's Exhibits 4 and 5.

First, King moved to exclude or redact the portions of State's Exhibit 5, in which he referred to law enforcement as "motherfu* *ers" and said "[f]u* * the police," [3] arguing relevance and prejudice under Rules 401 and 403, SCRE.[4] The circuit court denied the motion, stating "It's his term. He chose to use it. I'm going to let it in." As to the redaction of the videotapes, the circuit court explained that the State

---

**2.** *State v. Lyle*, 125 S.C. 406, 416, 118 S.E. 803, 807 (1923) (explaining the permissible uses of evidence of prior bad acts).

**3.** This issue was not appealed.

**4.** *See* Rule 401, SCRE (" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."); Rule 403, SCRE ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.").

"[c]annot do that because we don't have the capability. If you redact that word[,] you've got to redact whatever he said." The State informed the circuit court that the only way to redact portions of the videos would be to "fast forward through it."

King next moved to exclude or redact the portion of State's Exhibit 5 in which he discussed a "prior murder charge," arguing Rule 404(b)'s "prior bad acts" provision prohibited this discussion. The circuit court granted the motion, stating "I want that redacted. . . . make sure you [fast forward] in the right place . . . I don't want to hear anything about that." Subsequently, King moved to exclude or redact another portion of the video in which he again discussed a "prior murder charge," arguing it was inadmissible under Rules 403 and 404(b). The circuit court granted this motion, stating "I want to redact any reference to any prior conduct." However, the circuit court declined to "exclude or redact" the following portion of State's Exhibit 5:

> Investigator: I mean if you didn't do it, why didn't you just go out in the front yard, give the gun to the police and say hey man, Aloysius just ran out of the back door?
>
> King: They did not give me a godd* *n chance. Man she steady screaming about my godd* *n—I already got—I already got a murder kidnapping charge on my record. She didn't see s* *t—she was in [another] room.

Defense counsel again argued that this "prior bad acts" evidence was inadmissible under Rule 404(b). Although the State informed the court that King "does not have a conviction for murder on his record," the circuit court stated, "I'm going to leave it where it is."

Thereafter, King moved pursuant to Rule 404(b) to exclude or redact the portion of State's Exhibits 4 and 5 in which he discussed the McColl Charges. The circuit court denied the motion as to State's Exhibit 5 but granted the motion as to State's Exhibit 4. In the first reference, King stated, "I already got a murder kidnapping charge on my record," as quoted above,[5] and the second reference arose during the following exchange:

---

5. *See supra* p. 256.

Investigator: Who is that?

King: Aloysius, [the] same dude that I robbed. Me and him got back on good terms.

Investigator: Aloysius?

King: From McColl, that one—same dude that signed a warrant on me back in February. Me and him back on good terms.

The circuit court ruled, "I think it's appropriate based on the totality of what he's saying."

King next moved to exclude or redact the portion of the video in which he admitted "he had shot a gun" and that "he carries a gun," arguing relevance, prior bad acts, and prejudice under Rules 401, 403, and 404(b).[6] The circuit court denied the motion, stating "there is evidence of carrying a gun in this case. I'm going to let that stay in.... His possession of the gun is a critical part of the State's case, and I'm going to let it in." King also moved to exclude or redact the portion of the video in which King discusses "a lawyer on his old charge." The circuit court ruled, "I'll let that part in. Let's see where he goes." Subsequently, the circuit court denied King's motion to exclude or redact the portion of State's Exhibit 5 in which King refers to himself as a criminal. The circuit court explained that "[t]his is his characterization of himself. I'm not going to redact that.... Well, you understand that some of his prior record is coming in ... that alone is sufficient." Although defense counsel explained that "unless he testifies ... none of his prior record is coming in," the circuit court stated, "I'm going to leave it in."

Additionally, King moved to exclude or redact the portion of the video in which he discusses his own stabbing during an alleged armed robbery, again arguing relevance, prior bad acts, and prejudice under Rules 401, 403, and 404(b).[7] In response, the State argued that this portion of the tape was relevant because "[King] is saying ... that he carried a gun because he was stabbed 20 times whereas we know that the guy that stabbed him said he did so because [King] was trying to rob him." The circuit court noted that the parties dis-

---

6. These issues were not appealed.

7. This issue was not appealed.

cussed this particular segment in chambers and denied the motion, stating "I'm leaving that because the individual is coming in, and [King is] saying he was stabbed 20 times in self-defense. [However,] [t]here is a witness coming in [to testify] that's not true.... I'm letting that in based on the totality of the evidence that's here." The circuit court concluded its ruling with, "I'm not going to let the jury hear solely that he was stabbed [twenty] times without the truth coming out as to why he was stabbed." Subsequently, the circuit court ordered stricken the portion of the video in which King pulled up his shirt and said, "You see this because I been stabbed."

Lastly, King moved to exclude or redact the portion of the video in which he discussed "different members of the Marlboro County Sheriff's Department and the Marlboro County Jail with some familiarity," arguing lack of relevance and prior bad acts under Rules 401 and 404(b).[8] The circuit court denied the motion, explaining Marlboro County does not have the "capabilities to stop and start every phrase.... I want to redact everything that we can that's proper. We can't start redacting every word [be]cause you don't like it."

On the morning of trial, the State moved to admit the interrogation videos into evidence as State's Exhibits 4 and 5. Defense counsel noted the videos were admitted "[p]ursuant to the redactions" and "the previous objection I've made." Defense counsel reiterated that he wanted to preserve the following two objections, both of which were denied by the circuit court: (1) the reference to the prior stabbing, and (2) any mentioning of the prior murder and kidnapping charges. Regarding the prior stabbing, the parties discussed the following:

The Court: No, they redacted ... [a]nything [referring] to [the] prior stabbing.

[Defense Counsel]: Yes, Your Honor. There was another mention of [the prior stabbing] that was not redacted because the Court ruled not to redact [it].

The Court: Where was that and what line?

[Defense Counsel]: I think it was at 15:40:50

. . . .

---

8. This issue was not appealed.

[State]: [T]he time that we have [to be redacted] is 4:55:20
. . .

[Defense Counsel]: Your Honor, there is another reference to the stabbing after the Miranda,[9] and it's at 15:10:50. I believe the Court ruled not to redact it yesterday.

The Court: I ruled not to redact that one?

[Defense Counsel]: Yes, Your Honor.

The Court: Well, if I ruled on it that's fine.

Likewise, the parties discussed the reference to the prior murder and kidnapping charges:

[Defense Counsel]: I made an objection to a prior murder and kidnapping charge at [5:08:09 through 5:08:10.]

. . . .

[Defense Counsel]: That hasn't been redacted, Your Honor.

The Court: Why?

[Defense Counsel]: He mentioned that—I believe he stated on the record that he couldn't—that Marlboro County [is] unable to go through line by line and redact every word or every reference to anything in the statement. . . .

The Court: [T]his equipment is not the best in the world. They have made every effort to do it. It's not as sophisticated as it should be, but you couldn't redact that part?

[State]: . . . . That was one that at the time, and I recall that section where the Court ruled that that part could stay in. . . .

The Court: If I ruled that I'm not going to beat a dead horse to death. If I ruled—did I rule it stays?

[State]: You did.

Thereafter, defense counsel again objected to the admission of the interrogation videos, explaining that "some of the reasons for not redacting certain parts is that the [video] equipment in Marlboro County is not sufficient to do so. I believe that if you were in another county[,] they would have sufficient means to do so."

The State indicated that Marlboro County has "current equipment," but the equipment is "not designed to allow for

---

9. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

redacting and editing it so that nobody can then say that law enforcement had tampered with evidence." Defense counsel noted that other law enforcement agencies have the capability to make more precise redactions than rudimentary fast-forwarding. The circuit court responded, "Well, we don't have that other agency here. We are in the second day of the trial. We spent most [of] the time with your objections. I'm ready for the jury." To avoid any other delays associated with King's evidentiary objections to State's Exhibit 5, the circuit court finalized its rulings on admission of the video for the purposes of appellate review: "I don't want you to make your objections again as to those items. . . . You've made them and [they] are protected for the record."

The State called Wife as its first witness. She testified that in the early morning hours of November 11, 2011, her husband got up to answer a knock on the door. He returned to the bedroom, told his wife that King was at the door, and again left their bedroom. Wife testified that she heard Victim say, "Naw, man, I don't have," and then she heard a "pop." King then entered the Galloways' bedroom, pointed a gun in Wife's face, and hit her on the top of the head with the handle of the gun, causing the gun to discharge a bullet into the wall.

When King left the Galloways' bedroom, Wife called 911 and walked into the living room where she found her husband dead on the floor. King then walked into the living room with a gun to Cousin's head, took the telephone from Wife's hands, and hung it up. When the 911 operator called back, King answered and said, "[M]y home boy shot my neighbor. He came for some liquor. He shot my neighbor." King then ran out the back door "[w]ith the gun and the phone in his hand."

The State next called Cousin, who testified that he was living with the Galloways at the time of the shooting. He awoke to Wife "screaming" his name and found her in the living room where King had "a gun to her face." Cousin did not hear any shots because he was sleeping. According to Cousin, King "turned and pointed" the gun at his chest, said that "[o]ne of his boys did it," and ran out the door.

Thereafter, the State called Deputy Timmy Shaw of the Marlboro County Sheriff's Department (MCSD). When Shaw approached the Galloway home, he saw someone running out

of the back door. He then pursued King on foot and subsequently apprehended him. After securing King, Shaw patted him down for weapons. Although he "[d]idn't actually find any weapons," he "[d]id find a [one-half pint] bottle of [Burnett Sparkle]" in King's pocket.[10] Shaw also found "the top part of a wireless [home] phone" underneath the pick-up truck where King was hiding. Shaw then read King his *Miranda* rights. Thereafter, Shaw "took [King] to [MCSD] and put him in [an] interrogation room."

Subsequently, the State called Investigator Shawn Felder of MCSD. Felder testified he conducted a recorded interview of King on the night of the incident. Felder further testified that although he could smell alcohol on King's breath, he did not conduct a breathalyzer test because King "did not appear to be under the influence." Once King's gunshot residue kit was complete, Felder read King his *Miranda* warnings. King did not request a lawyer and agreed to speak to Felder without representation. Due to the "poor quality" of the video, the circuit court allowed Felder to testify "as to what [King] said" before playing the video for the jury to "enable [them] to get the full context."

The State next called Aloysius McLaughlin to testify. The circuit court indicated that the State could ask McLaughlin if he was with King on the night of the incident and if they were friends. However, the circuit court strongly cautioned that any reference to the McColl Charges would result in a mistrial. McLaughlin testified that, on the night of Victim's murder, he was with his sister and his former girlfriend, Melissa Graham. He explained that he was not with King that night because they were not "cool" at the time.

Immediately thereafter, the State called Graham to confirm that she was with McLaughlin on the night of the incident. She testified that MCSD requested that she and McLaughlin go down to the station to talk about the murder investigation. Graham then testified: "[H]ow we going to help this man murder somebody [when] he just robbed us[?]" Defense counsel immediately objected, and the circuit court ordered stricken "[t]he last utterance made by this witness." The

---

**10.** The record reflects that this is the same type of liquor that Victim sold from his home.

circuit court stated that Graham's reference to the robbery was "totally irrelevant to any issue in this case," and instructed the jury, "You must not and may not consider that remark in any way whatsoever."

Thereafter, King moved for a mistrial on the ground that the curative instruction "was insufficient to cure the prejudice [to] my client.... I don't believe any instruction, quite honestly, would be sufficient." The circuit court responded, "I've instructed the jury, and I respectfully decline to mistrial on something that [Graham] said that was not asked for by the Solicitor." Defense counsel subsequently withdrew the motion, noting Graham's remarks duplicated what was stated in State's Exhibit 5.

The State then called Investigator Jamie Seales of MCSD, who testified that he conducted a second recorded interview of King on November 16, 2011. Seales further testified that he reviewed the *Miranda* form with King and that King signed the form. Seales explained that he told King, "This is the same one that you signed before when the other investigator spoke to you." Seales testified that King replied, "[I don't] even remember that." Seales then explained King's summarization of the events of November 11, 2011. Thereafter, the second interrogation video was admitted into evidence as State's Exhibit 4.

Following the close of the State's case, King moved for a directed verdict as to all four indictments, which the circuit court denied. The circuit court charged the jury on murder; involuntary manslaughter; the defense of accident; assault and battery of a high and aggravated nature; assault and battery in the first, second, and third degrees; possession of a firearm during the commission of a violent crime; and pointing and presenting a firearm. The jury found King guilty of murder, assault and battery in the third degree, pointing and presenting a firearm,[11] and possession of a weapon during the commission of a violent crime. The circuit court sentenced King to life in prison on the murder conviction; five years imprisonment on the possession conviction, to run consecutively with the previous sentence; and thirty days imprisonment,

---

11. King did not appeal his conviction for pointing and presenting, and the record on appeal does not include King's sentence on this charge.

suspended on time served, on the conviction for assault and battery in the third degree.

On September 24, 2012, King moved for a new trial, arguing that, contrary to the parties' understanding at the pretrial motions hearing, MCSD did have the capability to redact videotaped interrogations in one-second intervals. At an October 10, 2012 hearing, defense counsel argued that the circuit court could have excluded the references to King's prior murder, kidnapping, and armed robbery charges without impacting the other portions it found admissible because the software's instruction manuals showed that one-second redactions were possible. Nevertheless, the circuit court denied the motion from the bench for the following reasons: (1) accomplishing the redactions "would've delayed the case to at least the following week"; (2) King voluntarily made the references while trying to explain away his actions; and (3) the evidence was harmless.

The circuit court formalized its denial of the motion for a new trial by order dated November 8, 2012, and filed on November 12, 2012. The written order made no reference to the reasons offered at the October 10, 2012 hearing. Instead, the circuit court stated that "[b]oth parties were given an opportunity to redact the videos and/or agree to the redacted times when played before the court, following [pretrial] motions on August 27th, 2012. The Court then ruled upon admissibility of the video statements on September 10th, before the trial began."

## ISSUES

I. Did the circuit court err in failing to conduct an on-the-record Rule 404(b) analysis when it excluded some, but not all, references to King's prior bad acts?

II. Did the circuit court err in denying King's motion for a mistrial?

III. Did the circuit court err in denying King's motion for a new trial?

## STANDARD OF REVIEW

"In criminal cases, the appellate court sits to review errors of law only." *State v. Williams,* 386 S.C. 503, 509, 690 S.E.2d 62, 65 (2010) (quoting *State v. Wilson,* 345 S.C. 1, 5–6,

545 S.E.2d 827, 829 (2001)). Thus, an appellate court "is bound by the [circuit] court's factual findings unless they are clearly erroneous." *State v. Baccus*, 367 S.C. 41, 48, 625 S.E.2d 216, 220 (2006). "The admission or exclusion of evidence is left to the sound discretion of the trial judge, whose decision will not be reversed on appeal absent an abuse of discretion." *State v. Black*, 400 S.C. 10, 16, 732 S.E.2d 880, 884 (2012) (quoting *State v. Saltz*, 346 S.C. 114, 121, 551 S.E.2d 240, 244 (2001)); *see also State v. Dunlap*, 346 S.C. 312, 324, 550 S.E.2d 889, 896 (Ct.App.2001) ("The admission of evidence concerning past convictions for impeachment purposes remains within the trial judge's discretion, provided the judge conducts the analysis mandated by the evidence rules and case law."). "An abuse of discretion occurs when the [circuit] court's ruling is based on an error of law or, when grounded in factual conclusions, is without evidentiary support." *Black*, 400 S.C. at 16, 732 S.E.2d at 884 (quoting *State v. Jennings*, 394 S.C. 473, 477–78, 716 S.E.2d 91, 93 (2011)). "To warrant reversal, an error must result in prejudice to the appealing party." *Id.* at 16–17, 732 S.E.2d at 884.

## ANALYSIS

### I. Bad Acts Evidence

King argues the circuit court erred in failing to conduct the required Rule 404(b) analysis prior to admitting prior bad acts evidence. We agree.

### A. Preservation

■ Initially, we address whether King's argument regarding prior bad acts evidence is properly preserved for appellate review. The State asserts:

[M]uch of King's argument regarding the admission of certain comments King made during his first interview (State's Exhibit [5]) is not preserved for appellate review ... [because] he did not specifically request that the [circuit] court assess whether the State was proving those prior bad acts with clear and convincing evidence. King further did not request [that] the [circuit] court engage in an on the record prejudice analysis as required by Rule 403, SCRE.

On reply, King argues that he was not required to do anything more than object under Rule 404(b) and that "the State bears the burden of demonstrating that [the bad acts] evidence falls within an exception."

■■ In *State v. Martucci*, this court concluded that because "Martucci did not argue at trial that the State failed to show the prior bad acts by clear and convincing evidence," the issue could not be considered on appeal. 380 S.C. 232, 256–57, 669 S.E.2d 598, 611 (Ct.App.2008); *see also State v. Luckabaugh*, 327 S.C. 495, 499, 489 S.E.2d 657, 659 (Ct.App.1997) (concluding that the issue was not preserved because the defendant failed to object to the testimony as less than clear and convincing); *Wilder Corp. v. Wilke*, 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998) ("It is axiomatic that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial judge to be preserved for appellate review."). A party must state "the specific ground of objection, if the specific ground was not apparent from the context." Rule 103(a)(1), SCRE. However, "[a] party need not use the exact name of a legal doctrine in order to preserve it, but it must be clear that the argument has been presented on that ground." *State v. Dunbar*, 356 S.C. 138, 142, 587 S.E.2d 691, 694 (2003). "The objection should be sufficiently specific to bring into focus the precise nature of the alleged error so that it [could] be reasonably understood by the trial [court]." *McKissick v. J.F. Cleckley & Co.*, 325 S.C. 327, 344, 479 S.E.2d 67, 75 (Ct.App.1996).

The record reveals that the parties discussed the State's 404(b) motion in chambers, and defense counsel moved on several occasions to exclude or redact portions of State's Exhibits 4 and 5, arguing inadmissibility under Rules 401, 403, and 404(b). Moreover, the circuit court specifically stated, after the multiple objections, "I don't want you to make your objections again as to those items. You've made them and are protected for the record."

■ Still, to the extent the circuit court conducted an improper Rule 404(b) analysis, it was King's duty to raise those arguments to the circuit court. *See State v. Smith*, 391 S.C. 353, 365, 705 S.E.2d 491, 497 (Ct.App.2011) (explaining that it is the defendant's duty to raise arguments regarding an

improper Rule 404(b) or Rule 403 analysis to the trial judge), *rev'd on other grounds,* 406 S.C. 215, 750 S.E.2d 612 (2013). However, unlike the defendant in *Smith,* King is not arguing that the circuit court conducted an improper Rule 404(b) or Rule 403 analysis. Instead, King contends that the circuit court failed to conduct any analysis *at all.* As King's argument was sufficiently specific, apparent from the context, and clear, we find it preserved for appellate review.

### B. Merits

"The process of analyzing [prior] bad act evidence begins with Rule 401, SCRE." *State v. Wallace,* 384 S.C. 428, 433, 683 S.E.2d 275, 277 (2009); *see also* Rule 401, SCRE (defining "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence"). If the circuit court determines the prior bad acts evidence is relevant, it "must then determine whether the bad act evidence fits within an exception of Rule 404(b)." *Wallace,* 384 S.C. at 433, 683 S.E.2d at 277.

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Rule 404(b), SCRE. Such evidence "may, however, be admissible to show motive, identity, the existence of a common scheme or plan, the absence of mistake or accident, or intent." *Id.*

> To be admissible, the bad act must logically relate to the crime with which the defendant has been charged. If the defendant was not convicted of the prior crime, evidence of the prior bad act must be clear and convincing. Even if prior bad act evidence is clear and convincing and falls within an exception, it must be excluded if its probative value is substantially outweighed by the danger of unfair prejudice to the defendant.

*State v. Pagan,* 369 S.C. 201, 211, 631 S.E.2d 262, 267 (2006) (citations omitted).

"Once bad act evidence is found admissible under Rule 404(b), the [circuit] court must then conduct the prejudice analysis required by Rule 403, SCRE." *State v. Wallace,*

384 S.C. at 435, 683 S.E.2d at 278 (footnote omitted); *see also* Rule 403, SCRE ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. . . ."). "Unfair prejudice means an undue tendency to suggest [a] decision on an improper basis." *State v. Stokes*, 381 S.C. 390, 404, 673 S.E.2d 434, 441 (2009) (quoting *State v. Dickerson*, 341 S.C. 391, 400, 535 S.E.2d 119, 123 (2000)). "Finally, the determination of prejudice must be based on the entire record, and the result will generally turn on the facts of each case." *Id.* at 404–05, 673 S.E.2d at 441.

 Here, although the circuit court initially failed to analyze the relevance of the prior bad acts evidence, it subsequently recognized that the McColl Charges were "totally irrelevant to any issue in this case" when it ordered stricken Graham's testimony about the McColl Charges. Moreover, despite the fact that the State informed the court that King "does not have a conviction for murder on his record," the circuit court failed to analyze the relevance of the reference to a "prior murder charge," and stated, "I'm going to leave it where it is."

 While we acknowledge that the circuit court is given broad discretion in ruling on questions concerning the relevancy of evidence,[12] the circuit court here provided no indication that it properly considered Rules 401, 403, or 404(b). Even if these prior bad acts fell within a 404(b) exception, the circuit court failed to determine whether the prior bad act evidence was clear and convincing, and failed to conduct an on-the-record Rule 403 balancing test. *See State v. Spears*, 403 S.C. 247, 254, 742 S.E.2d 878, 881 (Ct.App.2013) ("find[ing] the [circuit] court erred by failing to conduct an on-the-record Rule 403 balancing test."), *cert. denied* (Sept. 11, 2014).

 Generally, the proper remedy for failing to conduct such an analysis is to remand this issue to the circuit court to conduct the necessary analysis. *See, e.g., State v. Colf*, 337 S.C. 622, 629, 525 S.E.2d 246, 249 (2000) (concluding that when the circuit court failed to include an on-the-record Rule 609

---

12. *See State v. Aleksey*, 343 S.C. 20, 35, 538 S.E.2d 248, 256 (2000) ("The [circuit] judge is given broad discretion in ruling on questions concerning the relevancy of evidence, and his decision will be reversed only if there is a clear abuse of discretion.").

balancing test, the appellate court "should have remanded the question to the trial court" rather than conduct the balancing test, reasoning that "[i]t is difficult, if not impossible, for an appellate court to balance the interests at stake when the record does not contain the specific facts and circumstances necessary to a decision"); *State v. Howard,* 384 S.C. 212, 223, 682 S.E.2d 42, 48 (Ct.App.2009) (finding the circuit court erred in failing to conduct a proper Rule 609(b) balancing test because it "provided no analysis of the prejudicial impact of admitting [the defendant's] prior convictions," and remanding for an on-the-record balancing test).

In *State v. Spears,* this court "decline[d] to conduct a de novo Rule 403 balancing test" and remanded the issue to the circuit court because it failed to perform a Rule 403 balancing test in admitting evidence of a prior conviction at trial. 403 S.C. 247, 258–59, 742 S.E.2d 878, 883 (Ct.App.2013). Noting the potential prejudice to the defendant in that case, the court stated "the jury could have determined Spears was guilty on an improper basis by relying on the ... testimony as propensity evidence." *Id.* at 258, 742 S.E.2d at 884. The court was "unable to say that the admission of the prior bad act testimony was harmless error" and found it "appropriate to remand for an on-the-record Rule 403 balancing test." *Id.* at 259, 742 S.E.2d at 884.

Here, we find the circuit court erred in failing to conduct a Rule 404(b) analysis before admitting prior bad acts evidence regarding King's "prior murder charge" and the McColl Charges. Thus, we remand to allow the circuit court the opportunity to conduct the necessary analyses.

## II. Motion for a Mistrial

King argues the circuit court erred in denying his motion for a mistrial when a witness for the State referenced King's prior charge for armed robbery shortly after the circuit court cautioned that any reference to the McColl Charges would result in a mistrial.

Initially, we question whether King's argument is properly preserved for appellate review, as King withdrew his motion regarding Graham's testimony about the robbery, stating, "I believe it's already in evidence so I don't really have

any grounds for a mistrial at this point." King argues that this issue is preserved because he did not withdraw the motion until after the circuit court denied it on the ground that the improper testimony was "not sufficient to cause a mistrial in this case." However, where an objection is expressly withdrawn, it cannot be raised on appeal. *See Rosamond Enter., Inc. v. McGranahan,* 278 S.C. 512, 513, 299 S.E.2d 337, 338 (1983) (per curiam) ("Any objection to that testimony cannot be raised for the first time on review, nor can it be heard on appeal when it is not properly raised by an exception.").

Moreover, King argues on appeal that the circuit court erred in failing to consider the factors for granting a mistrial as outlined in *State v. Thompson,* 276 S.C. 616, 621, 281 S.E.2d 216, 219 (1981) ("Among the factors to be considered are the character of the testimony, the circumstances under which it was offered, the nature of the case, the other testimony in the case, and perhaps other matters."). A review of the record reveals that King did not make this argument before the circuit court. *See Wilder Corp.,* 330 S.C. at 76, 497 S.E.2d at 733 ("It is axiomatic that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial judge to be preserved for appellate review."). He instead argued that the circuit court's curative instruction was insufficient to cure the harm created by Graham's testimony. *See State v. Haselden,* 353 S.C. 190, 196, 577 S.E.2d 445, 448 (2003) (explaining that a party "may not argue one ground below and another on appeal"). Accordingly, we find King's argument as to the denial of his motion for a mistrial unpreserved.

### III. Motion for a New Trial

King argues the circuit court erred in denying his motion for a new trial when it became clear that the State could have redacted precise portions of the videotaped interrogations. Because the circuit court failed to conduct an on-the-record balancing test, we find it would be premature for us to rule upon whether the court erred in denying King's motion for a new trial. Based upon our precedents, as well as a thorough review of the record, we find the proper remedy is to remand with instructions for the circuit court to conduct an on-the-record balancing test to determine whether King would be

prejudiced by the introduction of certain prior bad acts evidence. *See, e.g., Colf,* 337 S.C. at 629, 525 S.E.2d at 249; *State v. Spears,* 403 S.C. at 258–59, 742 S.E.2d at 883–84; *State v. Howard,* 384 S.C. at 223, 682 S.E.2d at 48.

If, upon remand, the circuit court determines the probative value of the prior murder and kidnapping charge, or the McColl Charges, is substantially outweighed by the danger of unfair prejudice to King, then the court should order a new trial. If, on the other hand, the circuit court finds the probative value of the evidence in question is not substantially outweighed by the danger of unfair prejudice, then the conviction shall be affirmed subject to the right of appellate review.

## CONCLUSION

We hold the circuit court's denial of King's motion for a mistrial is not preserved for appellate review. With respect to the evidentiary issues raised in King's motion to exclude or redact prior bad acts evidence and in King's motion for a new trial, we remand this matter to the circuit court so that it may conduct the necessary on-the-record balancing tests. Accordingly, this matter is

**REMANDED.**

WILLIAMS, J., concurs.

GEATHERS, J., dissenting.

I would affirm King's conviction because the non-*Lyle*[13] evidence of King's guilt was overwhelming. Victim's grandson saw King point the gun at Victim immediately prior to the gun's discharge. After shooting Victim, King pistol-whipped Wife, pointed the gun at Cousin's chest, and hung up the telephone Wife was using to speak to a 911 operator. When the 911 operator called back, King told the operator one of his homeboys shot Victim. When King learned police had arrived at the home, he fled the home and attempted to hide from police. King initially told police that McLaughlin shot Victim;

---

**13.** *See State v. Lyle,* 125 S.C. 406, 416, 118 S.E. 803, 807 (1923) (holding evidence of the defendant's other crimes or wrongs is generally not admissible to prove his propensity to commit the charged offense, but may be admissible to show motive, identity, common scheme or plan, absence of mistake or accident, or intent).

only in his second statement to police did he allege that he shot Victim by accident.

Therefore, any possible error in admitting the *Lyle* evidence was harmless beyond a reasonable doubt. *See State v. Gillian*, 373 S.C. 601, 609–10, 646 S.E.2d 872, 876 (2007) (finding that the admission of the specifics of the defendant's prior bad act in violation of Rule 403, SCRE, was harmless because the defendant's guilt was proven by other competent evidence "such that no other rational conclusion can be reached"); *State v. Keenon*, 356 S.C. 457, 459, 590 S.E.2d 34, 35 (2003) (holding the trial court erred in allowing the State to present evidence of multiple prior convictions "without first weighing the prejudicial effect against the probative value" but finding the error harmless "because of the overwhelming evidence of petitioner's guilt"); *State v. Brooks*, 341 S.C. 57, 62–63, 533 S.E.2d 325, 328 (2000) (holding whether the improper introduction of prior bad acts is harmless requires the appellate court to review "the other evidence admitted at trial to determine whether the defendant's 'guilt is conclusively proven by competent evidence, such that no other rational conclusion could be reached'" (quoting *State v. Parker*, 315 S.C. 230, 234, 433 S.E.2d 831, 833 (1993))); *State v. Adams*, 354 S.C. 361, 381, 580 S.E.2d 785, 795 (Ct.App.2003) ("[A]n insubstantial error not affecting the result of the trial is harmless where 'guilt has been conclusively proven by competent evidence such that no other rational conclusion can be reached.'" (quoting *State v. Bailey*, 298 S.C. 1, 5, 377 S.E.2d 581, 584 (1989)), *cert. denied*, (2004)); *id.* (concluding even if the admission of evidence of an initial burglary of the victim's house violated *Lyle*, it did not affect the evidence that supported the defendant's guilt in the subsequent burglary).