JUSTICE JAMES :
**191 Tyrone J. King was convicted of murder, possession of a weapon during the commission of a violent crime, third-degree assault and battery, and pointing and presenting a firearm. The trial court sentenced King to life imprisonment for murder, a consecutive five year term for possession of a firearm during the commission of a violent crime, and thirty days for third-degree assault and battery.[1] King appealed his murder and possession of a firearm during the commission of a violent crime convictions, and the court of appeals remanded the case to the trial court to conduct a full Rule 404(b), SCRE, analysis regarding the trial court's admission of certain other bad act evidence. State v. King , 416 S.C. 92, 784 S.E.2d 252 (Ct. App. 2016). We granted the State's petition for a writ of certiorari to review the court of appeals' decision. We vacate the court of appeals' decision to remand the case for a Rule 404(b) analysis, we reverse King's convictions for murder and possession of a weapon during the commission of a violent crime, and we remand the matter to the trial court for a new trial on those **192 two charges. King's convictions for pointing and presenting a firearm *206 and third-degree assault and battery are unaffected by our holding, as King does not challenge those convictions.
I. FACTUAL AND PROCEDURAL HISTORY
King shot and killed his neighbor James Galloway (Victim) inside Victim's home during the early morning hours of November 11, 2011. The State contends King then pistol-whipped Karen Galloway (Wife) and pointed the gun at both Wife and Reggie Cousar (Cousin). King fled the scene when a Marlboro County Sheriff's Office (MCSO) deputy arrived. Following a foot chase, King was found hiding under a truck. MCSO recovered Victim's house phone at the scene where King was apprehended and retrieved a bottle of liquor from King's pocket. MCSO recovered a nine-millimeter handgun with an extended magazine from the wooded area behind King's home. MCSO also found a cartridge casing and a bullet hole in Victim's master bedroom and recovered a cartridge casing and a projectile from Victim's living room. The State claims the shooting was murder. King claims the shooting was an accident.
A. MCSO Interviews of King
MCSO conducted two videotaped interviews of King after he was arrested and charged. While King has never denied he was present at the time Victim was shot, King's statements explaining the sequence of events varied greatly. In his first statement-given the morning of the shooting-King claimed a man named Aloysius McLaughlin went with him to Victim's home to purchase alcohol.[2] King claimed McLaughlin unexpectedly shot Victim. At the time, King was facing charges that he had recently kidnapped and robbed McLaughlin and McLaughlin's girlfriend Melissa Graham in McColl, South Carolina (McColl charges). During this first interview, King explained to MCSO that he and McLaughlin were back on "good terms." King stated that after the shooting, he took the gun from McLaughlin, tried to calm Wife, and "waved" or "swung" the gun at her. He claimed he then gave the gun back to McLaughlin and ran from Victim's home in fear.
**193 During his second interview five days later, King informed MCSO he went to Victim's home alone and purchased some liquor. He explained he later went back to Victim's home alone to sell a handgun he obtained from a man named "Broom." King stated that while he was showing Victim the handgun and attempting to remove the magazine from the gun, the gun accidentally discharged, shooting Victim in the face. King explained he panicked and eventually ran from Victim's home in fear. Both recorded statements contain scattered references (by both King and law enforcement) to the McColl charges and to an unrelated murder charge against King. Both sets of charges are potential "other bad acts" under Rule 404(b), SCRE.[3] Over King's objection, the trial court permitted the jury to hear evidence of the pendency of these charges.
B. Pretrial Hearing
King was indicted for murder, possession of a weapon during the commission of a violent crime, assault and battery of a high and aggravated nature, and pointing and presenting a firearm. During a pretrial hearing, King moved to exclude several portions of his first recorded interview. Throughout King's objections, the State and the trial court commented on the apparent technological impossibility of redacting certain statements from the recorded interview.
Since the State contends King did not preserve the evidentiary issues for appellate review, we will summarize King's objections to the trial court. During the entire pretrial review of King's first recorded interview, King made numerous objections. King moved to have a reference to the McColl charges redacted:
*207 KING: Your Honor, at this point he just mentioned the McColl charge again. I will move to redact that part.
THE STATE: Your Honor, he only mentioned the McColl charge because [King] is saying [McLaughlin] is the one [who] murdered [Victim]. He's saying, "You mean the same guy you just robbed two weeks ago."
**194 TRIAL COURT: I'm going to leave-let that stand.
KING: Your Honor, for the record my objection was 404(b).
TRIAL COURT: I understand.
KING: 403 and 401, Your Honor.
TRIAL COURT: I think it's appropriate based on the totality of what he's saying. Go ahead.
King next objected to a statement he made regarding an unrelated murder for which he was charged:
KING: Your Honor, at approximately 4:08-I mean 5:08:25 he said he already has murders on his record, and I move to redact that, 404(b).
TRIAL COURT: What was that specific remark?
KING: He said, "I've already got murders on my record."[4 ]
THE STATE: Your Honor, he does not have a conviction for murder on his record.
KING: And he's been charged with murder, Your Honor.
TRIAL COURT: He said-I'm going to leave it where it is. Go ahead.
King then objected to a reference to a prior incident in which he was stabbed, and the trial court ordered that discussion to be redacted.
King's second recorded interview was also played for the trial court during the pretrial hearing. King objected to a discussion of his McColl charges, and the trial court ordered that portion of the interview to be redacted.
On the morning the trial began, the State moved to admit both recorded interviews into evidence. King again noted his objections to the interviews and noted the redactions the trial court ordered the day before. King had also emailed the trial court a list of some of his objections with the specific timestamps for the record. The list was made a court's exhibit. The State then informed the trial court it was no longer seeking to admit the first portion of the first recorded interview, which included references to the unrelated murder charge and the McColl charges. King replied he objected to more than just the first portion of the video. King specifically noted his **195 objection to the jury hearing evidence of the prior stabbing, the unrelated murder charge, and the McColl charges. King stated:
KING: I made an objection to a prior murder and kidnapping charge at [5:08:09 through 5:08:10].
....
KING: That hasn't been redacted, Your Honor.
TRIAL COURT: Why?
KING: He mentioned that-I believe he stated on the record that he couldn't-that Marlboro County was unable to go through line by line and redact every word or every reference to anything in the statement. ...
TRIAL COURT: Well, this equipment is not the best in the world. They have made every effort to do it. It's not as sophisticated as it should be, but you couldn't redact that part?
THE STATE: Beg the Court's indulgence. That was one that at the time, and I recall that section where the Court ruled that that part could stay in. I can't recall exactly-
TRIAL COURT: If I ruled that I'm not going to beat a dead horse to death. If I ruled-did I rule it stays?
THE STATE: You did.
After further colloquy concerning the technological impossibility of redacting comments made in the interviews, the trial court concluded the comments regarding the McColl charges and the unrelated murder charge need not be redacted.
*208 C. Trial Testimony
Shawn Feldner, an investigator for MCSO, testified to the jury that he conducted King's first recorded interview on the night of the shooting. Prior to a portion of the first recorded interview being played for the jury, the trial court permitted Investigator Feldner to testify as to what King said to "enable [the jury] to get the full context of what was said." Investigator Feldner did not mention King's unrelated murder charge or the pending McColl charges during his summary. However, when the first interview was published to the jury, it included references to both the unrelated murder charge and the McColl charges.
**196 Jamie Seales, another MCSO investigator, testified he conducted King's second interview. Investigator Seales likewise gave a summary to the jury of what King communicated to him during the interview. A portion of the second recorded interview was published to the jury. It does not appear from the record that any references to the unrelated murder and McColl charges were mentioned in the published portion of the second interview.
Wife testified she was in bed with Victim when there was a knock at their front door at approximately 2:30 a.m. She stated Victim answered the door, came back to the room, and told her King was at the door. Wife testified Victim went back into the living room and she heard a "pop" after hearing Victim say, "Naw, man, I don't have ...." Wife did not see the shooting. She testified King ran into her bedroom, pointed a gun in her face, and hit her in the head with the gun-causing it to discharge. Wife explained she called 911 when King ran out of the bedroom. Wife testified she went into the living room and saw Victim on the floor. She testified she saw King pointing a gun at Cousin and stated that when King saw her, he ran over and hung up the phone. Wife testified King answered the phone when the 911 operator called back and said, "Yeah, yeah, my home boy shot my neighbor. He came for some liquor. He shot my neighbor." Wife explained King ran out the back door when the MCSO deputy arrived. Wife made an in-court identification of King and noted King had been their neighbor for the last twelve or thirteen years.
Cousin testified he was asleep inside Victim's home the morning of the shooting. He testified he woke up after hearing Wife scream his name. Cousin stated he saw King in the living room with a gun to Wife's face. He noted King pointed the gun at his chest and told him, "One of [my] boys did it." Cousin made an in-court identification of King.
Victim's grandson (Grandson), who was ten years old at the time of the shooting and eleven years old at the time of trial, testified he was asleep inside Victim's home in a living room chair the morning of the shooting. Grandson stated he woke up after King came inside the house. Grandson explained that after King asked Victim for some "beer or liquor," King pulled a gun out from his pants, pointed it at Victim, and shot him.
**197 Grandson noted King was the only person he saw inside the house at that time. On cross-examination, Grandson clarified he saw King point the gun at Victim's stomach but admitted he was not looking at King and Victim when the shot was fired and only heard the shot. Victim was shot in the face.
Timothy Shaw, a deputy with MCSO, testified he was the responding officer the morning of the shooting. He noted he arrived at the scene quickly because Victim's house was only 200 yards from MCSO. Deputy Shaw testified that when he arrived, one of the people on the porch informed him the suspect was running out the back door. Deputy Shaw explained he chased the suspect on foot before apprehending him. He noted he recovered a bottle of liquor[5] and Victim's house phone from the suspect. He stated he arrested the suspect and read him his Miranda rights. Deputy Shaw testified he did not observe any other suspects running from Victim's home. Deputy Shaw made an in-court identification of King as the suspect he apprehended.
*209 Aloysius McLaughlin and Melissa Graham, McLaughlin's girlfriend at the time of the shooting, both testified they were not with King on either the night before the shooting or the early morning of the shooting. The forensic pathologist testified the gunshot that killed Victim was fired between six inches and four feet away from Victim's face. John Roberts of the State Law Enforcement Division (SLED) testified there was gunshot residue (GSR) on King's right palm. Michelle Eichenmiller of SLED testified the two cartridge casings and one projectile recovered from Victim's home were fired from the handgun found in the woods behind King's home.
At the close of the State's case, the trial court denied King's motion for a directed verdict. The jury deliberated for approximately an hour and a half before requesting to be recharged on the three degrees of assault and battery. The jury also requested to be recharged on the difference between murder and involuntary manslaughter (which was charged to the jury as a lesser-included offense of murder). After further deliberation, the jury found King guilty of murder, third-degree assault and battery, pointing and presenting a firearm, and **198 possession of a weapon during the commission of a violent crime.
King appealed, arguing the trial court erred in excluding some but not all of the references to the unrelated murder charge and the McColl charges. The court of appeals first found King properly preserved his argument for appellate review. State v. King , 416 S.C. 92, 107-09, 784 S.E.2d 252, 260-61 (Ct. App. 2016). On the merits, the court of appeals concluded the trial court "provided no indication that it properly considered Rules 401, 403, or 404(b) [of the South Carolina Rules of Evidence]." Id. at 110, 784 S.E.2d at 262. The court of appeals stated, "Even if these prior bad acts fell within a 404(b) exception, the [trial] court failed to determine whether the prior bad act evidence was clear and convincing, and failed to conduct an on-the-record Rule 403 balancing test." Id. The court of appeals remanded the matter to the trial court to properly conduct the necessary analyses. Id. at 111, 784 S.E.2d at 262. We granted the State's petition for a writ of certiorari.
II. DISCUSSION
A. Preservation
The State asserts King's argument that the trial court erred in failing to conduct an on-the-record Rule 404(b) analysis regarding the other bad act evidence was not preserved for review. The State argues that although King did make a general objection under Rule 404(b), he did not specifically request the trial court to assess whether the State proved those other bad acts by clear and convincing evidence. Also, the State contends King did not specifically request the trial court to engage in an on-the-record prejudice analysis as required by Rule 403. The State asserts that because the argument which is now the basis for remand was never advanced at trial or ruled upon by the trial court, the issue was not preserved. We disagree.
"In order for an issue to be preserved for appellate review, it must have been raised to and ruled upon by the trial [court]. Issues not raised and ruled upon in the trial court will not be considered on appeal."
**199 State v. Dunbar , 356 S.C. 138, 142, 587 S.E.2d 691, 693-94 (2003). "A party need not use the exact name of a legal doctrine in order to preserve it, but it must be clear that the argument has been presented on that ground." Id. at 142, 587 S.E.2d at 694. In State v. Smith , the court of appeals explained it is the defendant's duty to raise arguments regarding an improper Rule 403 or 404(b) analysis to the trial court. 391 S.C. 353, 365, 705 S.E.2d 491, 497 (Ct. App. 2011), rev'd on other grounds , 406 S.C. 215, 750 S.E.2d 612 (2013).
King preserved his other bad act argument regarding his unrelated murder charge and his pending McColl charges. Pretrial, King moved for several references to these charges to be redacted from the recorded interviews. Although the trial court ordered some of the references to be redacted, the trial court permitted references to the unrelated murder and pending McColl charges to remain in the portion of King's *210 first recorded interview published to the jury. When objecting to the references to the McColl charges in that portion of the interview, King cited to Rules 401, 403, and 404(b), SCRE. When objecting to evidence of the unrelated murder charge in that portion of the interview, King cited Rule 404(b), SCRE. Without any on-the-record explanation or analysis, the trial court made a pretrial ruling that this evidence was admissible. King memorialized his pretrial objections in an email he sent to the trial court. On the morning trial began, King renewed his objections when the State offered the recorded interviews into evidence, but the trial court again overruled his objections. The trial court made its rulings final and stated, "I don't want you to make your objections again as to those items, the second part. You've made them and are protected for the record. ... We don't want to waste another day with objections."
Had the trial court conducted the proper analyses under the foregoing Rules of Evidence, King indeed would have been required to raise any perceived errors in those analyses for the trial court to rule upon. See Smith , 391 S.C. at 365, 705 S.E.2d at 497. However, we agree with the court of appeals that this case is distinguishable from Smith , because unlike the defendant in Smith who failed to object to an improper Rule 404(b) or Rule 403 analysis, King is not arguing the trial court conducted an improper analysis. Rather, King argues **200 the trial court erred by not conducting any analysis at all before deciding to admit evidence of the unrelated murder charge and the McColl charges. We find King's argument was sufficiently specific and apparent from its context to bring the trial court's attention to his claim of error. See State v. Johnson , 363 S.C. 53, 58, 609 S.E.2d 520, 523 (2005) ("[An] objection should be addressed to the trial court in a sufficiently specific manner that brings attention to the exact error."). Therefore, we find King's argument was preserved.
B. Evidence of King's Other Bad Acts
Evidence of other bad acts is generally inadmissible to prove a defendant's guilt for the crime charged; however, such evidence may be admissible to show motive, identity, the existence of a common scheme or plan, the absence of mistake or accident, or intent. Rule 404(b), SCRE. "To be admissible, the bad act must logically relate to the crime with which the defendant has been charged. If the defendant was not convicted of the prior crime, evidence of the prior bad act must be clear and convincing." State v. Fletcher , 379 S.C. 17, 23, 664 S.E.2d 480, 483 (2008). Nevertheless, this other bad act evidence must be excluded if its probative value is substantially outweighed by the danger of unfair prejudice to the defendant. Rule 403, SCRE (providing that although evidence may be relevant, it may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice").[6] "[T]he determination of prejudice must be based on the entire record, and the result will generally turn on the facts of each case." State v. Stokes , 381 S.C. 390, 404, 673 S.E.2d 434, 441 (2009).
Here, the court of appeals correctly held the trial court erred in failing to conduct a Rule 404(b) analysis before **201 admitting evidence of King's unrelated murder charge and his pending McColl charges. The court of appeals remanded the matter to allow the trial court the opportunity to conduct the necessary analyses. However, during oral argument before this Court, the State conceded there was no valid reason for the trial court to admit evidence of King's unrelated murder charge. Because the State now concedes any reference to the unrelated murder charge was inadmissible, a remand for the trial court to consider its admissibility would be pointless. *211 [7] Therefore, the question becomes whether the trial court's error in admitting this evidence was harmless beyond a reasonable doubt.
C. Harmless Error
The State argues that any error in admitting evidence of King's unrelated murder charge was harmless because of the overwhelming evidence of King's guilt. We disagree.
"Generally, appellate courts will not set aside convictions due to insubstantial errors not affecting the result." State v. Pagan , 369 S.C. 201, 212, 631 S.E.2d 262, 267 (2006). "Error is harmless beyond a reasonable doubt where it did not contribute to the verdict obtained." Id. Therefore, an insubstantial error not affecting a trial's result is harmless where "guilt has been conclusively proven by competent evidence such that no other rational conclusion can be reached." State v. Bailey , 298 S.C. 1, 5, 377 S.E.2d 581, 584 (1989).
**202 The State bases its argument of overwhelming evidence upon the following trial evidence: the testimony of three eyewitnesses who placed King in Victim's home with the murder weapon (Wife's testimony that she heard an argument between King and Victim prior to hearing the gunshot; Wife's testimony that King ran into her room, pointed the gun at her, and pistol-whipped her after the gunshot; Cousin's testimony that King pointed the gun at him; Grandson's testimony that King pointed the gun at Victim's stomach prior to Grandson hearing the gunshot); evidence that Victim was shot in the face; Wife's testimony that King hung up her phone when she tried to call 911; King's attempt to run away from the scene; the murder weapon being found in the woods behind King's residence; the recovery of Victim's house phone and liquor bottle resembling the type sold from Victim's home near where King was apprehended; King's differing statements to MCSO; gunshot residue on King's right palm; and King's admission that he shot Victim.
There is no dispute at this stage that King shot Victim, as King conceded during closing argument that he was holding the gun when it discharged. To prove the act constituted murder, the State must prove beyond a reasonable doubt that King acted with malice. Despite the existence of the evidence cited by the State, we conclude the evidence as a whole does not constitute overwhelming evidence that King acted with malice. No witness saw the actual gunshot. We acknowledge Grandson testified he saw King point the gun at Victim's stomach; however, Victim was shot in the face-not the stomach. Grandson testified he was not watching when the shot was fired. The evidence as a whole supports at least the inference that King pointed the handgun at Victim's stomach while showing it to him during a potential sale and then accidentally fired the gun into Victim's face while trying to remove the magazine. We acknowledge King's behavior following the alleged accident was erratic. However, this behavior does not constitute overwhelming evidence of malice at the time of the shooting. While jurors may doubt King's account of his killing of Victim, the evidence as a whole does not constitute overwhelming evidence that King acted with malice.
King claimed in his second interview with law enforcement that the gun accidentally discharged when he was attempting **203 to remove the magazine while he was showing the *212 gun to Victim. This account was published to the jury. The trial court charged the jury that the State was required to prove beyond a reasonable doubt that the shooting was not an accident. See State v. Goodson , 312 S.C. 278, 280, 440 S.E.2d 370, 372 (1994) ("For a homicide to be excusable on the ground of accident, it must be shown that the killing was unintentional, that the defendant was acting lawfully, and that due care was exercised in the handling of the weapon."). For the same reasons we conclude there was not overwhelming evidence of malice, we find there was not overwhelming evidence disproving King's defense of accident.
Based on the evidence presented at trial, we find King's guilt of murder was not conclusively proven such that no other rational conclusion could be reached. See Bailey , 298 S.C. at 5, 377 S.E.2d at 584 ("When guilt has been conclusively proven by competent evidence such that no other rational conclusion can be reached, the Court should not set aside a conviction because of insubstantial errors not affecting the result."). The admission into evidence of the unrelated murder charge is highly prejudicial to a defendant currently on trial for murder. See State v. Brooks , 341 S.C. 57, 62, 533 S.E.2d 325, 328 (2000) ("When the prior bad acts are similar to the one for which the appellant is being tried, the danger of prejudice is enhanced."). Since King was on trial for murder, it is entirely reasonable to conclude the jury considered the evidence of his unrelated murder charge in reaching its guilty verdict. Because evidence of King's guilt of murder was not overwhelming, we hold the erroneous admission of evidence of the unrelated murder charge was not harmless beyond a reasonable doubt.
Upon retrial, the admissibility of the McColl charges may turn upon issues other than Rule 404(b), as one of the alleged victims of the McColl incident, Aloysius McLaughlin, testified to the jury he was not with King at the time of the shooting of Victim. An explanation as to why the jury should not believe McLaughlin would associate with King might be relevant to that inquiry. Upon retrial and upon proper objection by King, the trial court may resolve the admissibility of the McColl charges under applicable evidentiary authority, including, but not limited to, Rules 401, 402, and 403.
**204 III. CONCLUSION
We find the court of appeals properly determined King's argument concerning the trial court's admission of evidence of other bad acts was preserved for appellate review. The trial court erred in admitting evidence of the unrelated murder charge, and we hold this error was not harmless beyond a reasonable doubt. We vacate the court appeals' decision to remand to the trial court for proper analysis of the admissibility of the unrelated murder charge, as a remand would be pointless. We hold King is entitled to a new trial on the charges of murder and possession of a weapon during the commission of a violent crime. Upon retrial, if the State seeks to introduce evidence of the McColl charges, the trial court must determine the admissibility of those charges through the application of Rules of Evidence that may be raised by proper objection. King's unappealed convictions for third-degree assault and battery and pointing and presenting a firearm are not affected by our holding.
REVERSED AND REMANDED.
FEW, J., and Acting Justice Arthur Eugene Morehead III, concur. HEARN, Acting Chief Justice, dissenting in a separate opinion in which Acting Justice Jan Benature Bromell Holmes, concurs.
ACTING CHIEF JUSTICE HEARN:
Because I am convinced that any error in the failure to redact King's admission of his prior murder charge and other bad acts is harmless beyond a reasonable doubt, I respectfully dissent. I agree completely with and adopt Judge Geathers' dissenting opinion from the court of appeals, as set out fully below:
I would affirm King's conviction because the non-Lyle[ ] evidence of King's guilt was overwhelming. Victim's grandson saw King point the gun at Victim immediately prior to the gun's discharge. After shooting Victim, King pistol-whipped Wife, pointed the gun at Cousin's chest, and hung up the *213 telephone Wife was using to speak to a 911 operator. When the 911 operator called back, King told the operator one of his homeboys shot Victim. When King learned police **205 had arrived at the home, he fled the home and attempted to hide from police. King initially told police that McLaughlin shot Victim; only in his second statement to police did he allege that he shot Victim by accident.
Therefore, any possible error in admitting the Lyle evidence was harmless beyond a reasonable doubt. See State v. Gillian , 373 S.C. 601, 609-10, 646 S.E.2d 872, 876 (2007) (finding that the admission of the specifics of the defendant's prior bad act in violation of Rule 403, SCRE, was harmless because the defendant's guilt was proven by other competent evidence "such that no other rational conclusion can be reached"); State v. Keenon , 356 S.C. 457, 459, 590 S.E.2d 34, 35 (2003) (holding the trial court erred in allowing the State to present evidence of multiple prior convictions "without first weighing the prejudicial effect against the probative value" but finding the error harmless "because of the overwhelming evidence of petitioner's guilt"); State v. Brooks , 341 S.C. 57, 62-63, 533 S.E.2d 325, 328 (2000) (holding whether the improper introduction of prior bad acts is harmless requires the appellate court to review "the other evidence admitted at trial to determine whether the defendant's 'guilt is conclusively proven by competent evidence, such that no other rational conclusion could be reached' " (quoting State v. Parker , 315 S.C. 230, 234, 433 S.E.2d 831, 833 (1993) ) ); State v. Adams , 354 S.C. 361, 381, 580 S.E.2d 785, 795 (Ct. App. 2003) ("[A]n insubstantial error not affecting the result of the trial is harmless where 'guilt has been conclusively proven by competent evidence such that no other rational conclusion can be reached.' " (quoting State v. Bailey , 298 S.C. 1, 5, 377 S.E.2d 581, 584 (1989) ), cert. denied , (2004); id . (concluding even if the admission of evidence of an initial burglary of the victim's house violated Lyle , it did not affect the evidence that supported the defendant's guilt in the subsequent burglary).
State v. King , 416 S.C. 92, 113-14, 784 S.E.2d 252, 263-64 (Ct. App. 2016) (Geathers, J., dissenting).
Acting Justice Jan Benature Bromell Holmes, concurs.

The record on appeal does not include King's sentence regarding his pointing and presenting a firearm conviction.

Victim sold alcohol from his home.

Rule 404(b), SCRE ("Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible to show motive, identity, the existence of a common scheme or plan, the absence of mistake or accident, or intent.").

King's statement actually referenced both the unrelated murder charge and the McColl kidnapping charge.

The brand of the liquor recovered from King matched the brand of liquor that Victim sold at his home.

Rule 403, SCRE, is sometimes misstated. See, e.g. , State v. Wallace , 384 S.C. 428, 435, 683 S.E.2d 275, 278-79 (2009) (incorrectly noting that for evidence to be admissible under a Rule 403 analysis, "[t]he probative value of evidence falling within one of the Rule 404(b) exceptions must substantially outweigh the danger of unfair prejudice to the defendant"). The correct test is the opposite: whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. The test described in Wallace incorrectly places the burden on the proponent of the evidence to establish admissibility, while the proper test places the burden on the opponent of the evidence to establish inadmissibility.

Even if the State did not concede the trial court's admission of King's unrelated murder charge was error, we would find the court of appeals erred in remanding the matter to the trial court to perform the appropriate analyses concerning that charge. In this case, there would be nothing for the trial court to analyze on remand. The only discussion in the record of the unrelated murder charge was in King's statement to law enforcement during his first recorded interview. There is no evidence of any facts concerning the unrelated murder in the record, and there is no evidence in the record of any logical relationship the unrelated murder charge may have to the instant murder charge; since the trial court could not receive any additional evidence on remand, a remand to determine its admissibility would serve no purpose. See Fletcher , 379 S.C. at 23, 664 S.E.2d at 483 ("To be admissible, the bad act must logically relate to the crime with which the defendant has been charged. If the defendant was not convicted of the prior crime, evidence of the prior bad act must be clear and convincing.").