**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Mickey Markell Johnson, Petitioner,

v.

State of South Carolina, Respondent.

Appellate Case No. 2017-001292

-------------------

Appeal From Sumter County
William H. Seals, Jr., Circuit Court Judge

-------------------

Opinion No. 5828
Submitted March 1, 2021 – Filed June 23, 2021

-------------------

**AFFIRMED**

-------------------

Appellate Defender David Alexander, of Columbia, for
Petitioner.

Attorney General Alan Wilson and Senior Assistant
Deputy Attorney General Megan Harrigan Jameson, both
of Columbia, for Respondent.

-------------------

**HILL, J:** A jury convicted Mickey M. Johnson of pointing and presenting a firearm, unlawfully carrying a pistol, criminal conspiracy, and accessory before the fact of murder. Johnson now appeals, claiming the trial court abused its discretion by admitting evidence of his involvement with a gang known as 135 Piru. We affirm.

**I.**

On the afternoon of March 22, 2011, several young men returning from a funeral on Bowman Street in Sumter stopped to visit acquaintances at a nearby apartment complex, congregating near Apartment 50. Johnson, the leader of the Sumter chapter of 135 Piru, was outside the complex working out with Bryan Bradley, John Wesley Stamps, Rasheed Brandon (all subordinate members of 135 Piru) and William Morgan (who was not a member of 135 Piru). Observing the gathering near Apartment 50, Johnson concluded the visitors were members of the rival Folk Nation gang. Johnson approached the visitors and advised them the complex was 135 Piru territory. Words were exchanged; the visitors departed. Around thirty minutes later, several cars arrived at the complex, and a large group (comprised of the earlier visitors and others) gathered in the street. One member of the group brandished a pistol. Johnson and his entourage moved towards the group. Morgan pulled a pistol from his waistband and pointed it at the group. More words were exchanged. Johnson grabbed the gun from Morgan and fired three shots into the group. Fire was returned. No one was hit. Everyone scattered.

Johnson drove off with his cohorts, except Stamps, who remained at the complex. Stamps testified a car soon pulled up, a passenger got out and entered Apartment 7 (or 17, he could not remember). The passenger soon returned to the car, which then sped off while one of the occupants shot at Stamps. Stamps promptly phoned Johnson and reported this latest assault. Johnson told Stamps to meet him at the home of Garnett Davis, Johnson's second in command.

Johnson phoned the national leader of 135 Piru and asked for "shooters." He was instructed to call the 135 Piru leader in Florence, South Carolina. When his call was not answered, Johnson devised a different plan. He and Davis drove Stamps, Bradley, and Brandon back to the complex. Johnson gave Brandon a 9mm pistol and told him to knock on the door of Apartment 7 and shoot whomever answered the door, but not to shoot any females. If no one answered, Brandon was to proceed to Apartment 50 and follow the same instructions. Stamps accompanied Brandon, while Bradley stayed behind as the getaway driver. When Bradley expressed hesitation, Johnson responded "be loyal or die." Johnson and Davis left the scene and returned to Garnett Davis' house.

After no one answered Brandon's knock at Apartment 7, he knocked on the door of Apartment 50. Annesia Allen answered the door. Brandon said "how you doing" and then fired a single shot, killing Allen's boyfriend, Adrian Davis (Victim), who was sitting at a desk just inside the door. Brandon, Bradley, and Stamps then drove to Garnett Davis' home where Johnson promoted them in gang rank and sent them out for beer.

Allen later identified Brandon as the shooter from a photographic line-up, and after further investigation, Brandon, Bradley, Stamps, and Johnson were arrested and charged with various offenses related to Victim's murder.

Johnson was tried alone. Before trial, he objected to the presentation of any evidence of his gang affiliation on the ground it constituted evidence of other crimes or bad acts prohibited by *State v. Lyle*, 125 S.C. 406, 118 S.E. 803 (1923), and was unduly prejudicial. The trial court overruled Johnson's objection, stating the gang evidence was relevant and its probative value was not substantially outweighed by any prejudicial effect. The trial court acknowledged Johnson's objection was continuing, and Johnson periodically renewed his general objection during trial.

At trial, a Sumter police detective and a SLED agent were qualified as experts in gang investigations. Both testified about 135 Piru's structure, rituals, and characteristics, as well as Johnson's role as leader of the Sumter chapter. Dontae Crayton, a former member, explained how Johnson alone held power over gang promotions, demotions, and discipline. Bradley and Stamps—who had pled guilty to lesser charges—testified about 135 Piru's rules, Johnson's firm leadership, the confrontations with the Folk Nation group the afternoon of March 22, and Johnson's order to his subordinates to execute the random hit that resulted in Victim's murder. Johnson did not testify or present evidence. The jury deliberated less than three hours and found him guilty of all charges except accessory after the fact.

## II.

### A. Gang evidence and Rule 404(b), SCRE

No previous South Carolina case has squarely addressed whether evidence of a defendant's gang affiliation is admissible in a criminal trial. Johnson claims the extensive gang-related testimony admitted over his objection constituted improper character evidence prohibited by Rule 404(b), SCRE, and *Lyle*. We disagree.

We start with the familiar rule that, in general, evidence of a person's character is not admissible to prove the person acted "in conformity therewith on a particular occasion." Rule 404(a), SCRE. We say in general because Rule 404(a) sets forth three exceptions that tell us when character evidence of an accused, a victim, or a witness is allowed. None of the three exceptions are in play here. Rule 404(b) commands that just as a person's general character is off limits unless it fits one of Rule 404(a)'s exceptions, evidence of a person's "other crimes, wrongs, or acts" is likewise inadmissible "to prove the character of a person in order to show action in conformity therewith." Rule 404(b), SCRE. Such evidence—commonly referred to

in our state as "prior bad act" or *Lyle* evidence—is not admissible unless its proponent can demonstrate it has a legitimate purpose, i.e. the evidence does something more than prove a person has a propensity to commit crimes. Rule 404(b), SCRE, recognizes only five legitimate purposes for prior bad act evidence: to prove "motive, identity, the existence of a common scheme or plan, the absence of mistake or accident, or intent."

Our supreme court addressed the proper approach to Rule 404(b) admissibility in *State v. Perry*, 430 S.C. 24, 842 S.E.2d 654 (2020). In a criminal case, the State must convince the trial court that the prior bad act evidence is logically relevant to a material fact at issue in the case: "If it is logically pertinent in that it reasonably tends to prove a material fact in issue, it is not to be rejected merely because it incidentally proves the defendant guilty of another crime." *Lyle*, 125 S.C. at 417, 118 S.E. at 807. If, after applying the logical relevancy test with "rigid scrutiny," the trial court concludes the prior bad act evidence serves some purpose other than to show the defendant's proclivity for criminal conduct (and that purpose is one of the five listed in Rule 404(b)), then the evidence is admissible unless its "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Rule 403, SCRE; *see Perry*, 430 S.C. at 44, 842 S.E.2d at 665. If the prior bad act did not result in a criminal conviction, the State also bears the burden of proving the prior bad act by clear and convincing evidence. *State v. Smith*, 300 S.C. 216, 218, 387 S.E.2d 245, 247 (1989).

Without question, the testimony about Johnson's gang affiliation was prior bad act evidence. Prior bad act evidence "is not rejected because character is irrelevant; on the contrary, it is said to weigh too much with the jury and to so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge." *Michelson v. United States*, 335 U.S. 469, 475–76 (1948) (footnote omitted). The law's disdain of character evidence draws from notions of basic fairness tied together by the "golden thread"—the presumption of innocence—so one is rightly judged by whether the government has proven what it has charged, regardless of who it has charged. That is, after all, the spirit of the rule of law.

Rule 404(b) bars the use of prior bad act evidence to prove character, deeming it useless to the factfinder, for such use does not make any legitimate fact at issue more or less probable. Proof that a defendant was a member of a gang, without more, generally proves nothing of consequence at a criminal trial and may even implicate First Amendment rights. *Dawson v. Delaware*, 503 U.S. 159, 168 (1992) (State may not use defendant's membership in Aryan Brotherhood as evidence in sentencing

hearing when there is no connection between membership and any issue relevant to sentencing; First Amendment prevents state from "employing evidence of a defendant's abstract beliefs at a sentencing hearing when those beliefs have no bearing on the issue being tried").

The State maintains it offered evidence of 135 Piru's structure, Johnson's command, and 135 Piru's rivalry with Folk Nation not to prove Johnson's criminal propensity but to prove motive and intent, as authorized by Rule 404(b). We agree this evidence was essential to explain the motive and intent behind the otherwise senseless shooting of the innocent Victim. Much of the gang evidence admitted demonstrated Johnson's iron grip on his gang underlings, enforced by physical intimidation, and how Brandon, Bradley, and Stamps were beholden to him and 135 Piru. The trial court was well within its discretion in finding this evidence was logically relevant to prove criminal conspiracy and accessory before the fact of murder. The evidence of Johnson's leadership of Sumter 135 Piru and his ordering of the random hit was probative—if not essential—to establish the reason why Brandon killed Victim and that he did so intentionally and maliciously. While motive is not an element of any of the crimes Johnson was charged with, the gang evidence was probative to the conspiracy and accessory charges, both of which invite proof of planning and agreement. This evidence therefore cleared, with room to spare, *Perry*'s hurdle that prior bad act proof serve some purpose other than parading Johnson's propensity for criminal conduct. *Perry*, 430 S.C. at 44, 842 S.E.2d at 665.

Our holding that in appropriate cases, Rule 404(b) authorizes admissibility of logically relevant gang evidence to prove motive and intent aligns with the decisions of numerous state and federal appellate courts. *See, e.g.*, *United States v. Jackson*, 918 F.3d 467, 483 (6th Cir. 2019) (gang evidence admissible to show motive and to explain how defendant ordered subordinate gang members to commit carjacking so stolen car could be used in retaliatory attack on rival gang); *United States v. Dillard*, 884 F.3d 758, 766 (7th Cir. 2018) (discussing probative value of gang membership evidence in conspiracy cases); *Armstrong v. State*, 852 S.E.2d 824, 830–32 (Ga. 2020) (evidence of defendant's gang membership relevant, admissible, and not unduly prejudicial because it explained motive actuating otherwise senseless shooting); *Smith v. Commonwealth*, 454 S.W.3d 283, 286–88 (Ky. 2015) (gang evidence relevant and not unduly prejudicial when it "offered a possible motive for what would otherwise appear to be an inexplicable massacre"); *State v. Legere*, 958 A.2d 969, 981–82 (N.H. 2008) (same); *State v. Nieto*, 12 P.3d 442, 450 (N.M. 2000) (same); *Commonwealth v. Reid*, 642 A.2d 453, 461 (Pa. 1994) (gang evidence admissible to prove motive and conspiracy); *Utz v. Commonwealth*, 505 S.E.2d 380,

384–86 (Va. Ct. App. 1998) (affirming expert evidence about gang affiliation and culture as probative of motive and intent; collecting cases).

However, in so holding, we caution that cases where prior bad act evidence of gang affiliation may be admitted to prove "motive" or "identity" will be uncommon, and these terms "are not magic passwords whose mere incantation will open wide the courtroom doors to whatever evidence may be offered in their names." *United States v. Goodwin*, 492 F.2d 1141, 1155 (5th Cir. 1974); 1 *McCormick on Evidence* § 190.5 (8th ed. 2020) (motive exceptions inapplicable "when 'motive' or 'intent' is just another word for propensity").

B. <u>Gang evidence, unfair prejudice, and Rule 403</u>

Having decided the evidence of Johnson's leadership and control of 135 Piru in Sumter met the narrow criteria of Rule 404(b), we next address whether the trial court acted within its discretion in concluding Rule 403 did not require exclusion. In undertaking its Rule 403 analysis, the trial court had to decide whether Johnson met his burden of showing the probative value of his gang affiliation was substantially outweighed by the danger of unfair prejudice. *State v. King*, 424 S.C. 188, 200 n.6, 818 S.E.2d 204, 210 n.6 (2018). In criminal cases, the term "unfair prejudice" "speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v. United States*, 519 U.S. 172, 180 (1997). "So, the Committee Notes to Rule 403 explain, 'Unfair prejudice' within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Id.* (internal quotations omitted). The experienced trial judge hit his mark, and we affirm the Rule 403 ruling. Our holding concerns only the unfair prejudice component of Rule 403 as Johnson did not invoke any other aspect of the Rule. *See State v. Phillips*, 430 S.C. 319, 329, 844 S.E.2d 651, 656 (2020) (noting review of unfair prejudice is separate from other Rule 403 concerns).

Evidence of gang affiliation demands careful handling because of its power to distract the fact finder from its rational task of deciding the facts from objective evidence, luring their attention to the lurid, raising the risk that they will decide the case on an improper or subjective (often an unduly emotional) basis. The rules of evidence recognize verdicts are still rendered by human hands, not the artificial workings of algorithms, and emotion has its place. Rule 403 ensures emotion stays in its place. Probative evidence always prejudices the opposing party by building a case against them; however, Rule 403 only forbids "unfair prejudice," and its balancing test enables the trial court to temper the risk that evidence will exert such a pull on the jurors' emotions that it overwhelms their ability to rationally and

impartially weigh the evidence and apply the law to the facts. Mention of gangs summons a stigma of lawlessness, and Rule 403 requires exclusion of gang evidence if the prejudicial risk substantially outweighs the evidence's probative value. But the criminal docket is not crowded with cherubs, and the rules of evidence are not designed to airbrush all of human nature out of the picture presented to juries. *See United States v. Gartmon*, 146 F.3d 1015, 1021 (D.C. Cir. 1998) ("Rule 403 does not provide a shield for defendants who engage in outrageous acts, permitting only the crimes of Caspar Milquetoasts to be described fully to a jury. It does not generally require the government to sanitize its case, to deflate its witnesses' testimony, or to tell its story in a monotone.").

While the trial court's admission of Johnson's affiliation with 135 Piru was not unduly prejudicial, the State came close to overplaying its hand in several respects. As we have held, evidence of the gang structure and culture passed Rule 404(b)'s logically relevant test, but we question why the jury needed to be repeatedly told the same thing about the same gang. The proverb may be true that judges, knowing nothing, need to be told the same thing three times, but juries do not, and Rule 403's bar against cumulative evidence empowers the trial judge to exclude the repetitive. Further, some of the testimony about Johnson and 135 Piru was so explosive that it may have implicated other Rule 403 concerns, including evidence that:

- Johnson previously led a gang known as "Sex Money Murder," whose members gained rank by "beating people, robbing, stealing, and selling drugs."
- Crayton's nickname was "Homicide."
- 135 Piru's national leader, known as "Machete," once visited Sumter and declared that certain locals who were "false-claiming" to be 135 Piru members should be forced to join or be killed.
- Johnson arranged for subordinate members to commit crimes at times he was not present.

This and other worrisome testimony surrounded the evidence admitted regarding 135 Piru and the events of March 22, 2011, but we have only been presented with Johnson's general unfair prejudice challenge to the admission of "gang evidence."

To sum up, we hold the trial court did not abuse its discretion in admitting the gang evidence as it was logically relevant to show motive and identity as authorized by Rule 404(b) and not unduly prejudicial within the meaning of Rule 403. We emphasize that even when gang evidence passes the Rule 404 and Rule 403 tests, trial courts must be vigilant in limiting its scope to the essential. In appropriate cases and upon appropriate request, a trial court may need to address the gang evidence

issue in voir dire; control its presentation with measures authorized by Rule 611, SCRE; and deliver limiting instructions consistent with Rule 105, SCRE, that tell the jury the purpose for which they may use the gang-related evidence and for what purposes they may not.

We decide this case without oral argument pursuant to Rule 215, SCACR.

**AFFIRMED.**

**WILLIAMS and THOMAS, JJ., concur.**